**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

---

JENNIFER HSU,
      Plaintiff,                                                              Case No. 1:17-cv-00128-RP

v.

ENHANCED RECOVERY
COMPANY, LLC, and
PHILADELPHIA INDEMNITY
INSURANCE COMPANY,
      Defendants.

---

**DEFENDANTS' OPPOSITION TO**
**PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

## I.  Introduction

Ms. Hsu has moved for partial summary judgment on the third count asserted in this matter, that Enhanced Recovery Company, LLC's use of "ERC" on its letters (the "Letters") to her violated the Fair Debt Collection Practices Act (the "Act") by using a name other than the true name of the collector in attempting to collect a debt. A collector's "true name" encompasses not only the collector's complete corporate name, as identified in its corporate organizational documents, but also an acronym of that name, a collector's trade name, or other names under which the collector generally conducts business. It is undisputed ERC is an acronym for Enhanced Recovery Company, and is used as a trade name for the company, which has been registered where required. Finally, Enhanced Recovery Company has been conducting business under the name ERC, as reflected in its registration with the United States Patent and Trademark Office as a service mark for which it has exclusive rights to use in connection with debt collection services. Accordingly, using ERC in the Letters did not violate the Act, and Ms. Hsu's Motion for Summary Judgment (the "Motion") must be denied.

II.     **The use of ERC's initials in its letters is wholly consistent with FTC guidance and does not violate the Act.**

Ms. Hsu claims Defendant violated the Act by using its initials, ERC, in the Letters rather than its complete corporate name, Enhanced Recovery Company, LLC. Ms. Hsu moves for summary judgment under section 1692e(14) of the Act, which prohibits the use of false names in collecting debts. Contrary to Plaintiff's assertion, the Act does not prohibit the use of "ERC."

Section 1692e(14) prohibits "[t]he use of any business, company, or organization name other than the true name of the debt collector's business, company, or organization." 15 U.S.C. § 1692e(14). Although the term "true name" in the section is not defined, the Supreme Court noted that "its import is straightforward: A debt collector may not lie about his institutional affiliation." *Sheriff v. Gillie*, 136 S. Ct. 1594, 1602 (2016). *Accord Peter v. GC Servs. LP*, 310 F.3d 344, 352 (5th Cir. 2002) (finding this provision was enacted, like the remainder of section 1692e, "against a backdrop of cases in which courts held that communications designed to create a false sense of urgency were deceptive.") *abrogated on other grounds by Gillie*, 136 S. Ct. at 1602. In *Gillie*, the Court held that collectors' use of the creditor's letterhead did not violate section 1692e(14) where the relationship between the parties was explained in the letter. *Gillie*, 136 S. Ct. at 1602. It reasoned that, "[f]ar from misrepresenting [the collectors'] identity, letters sent by [the collectors] accurately identify the office primarily responsible for collection of the debt (the [creditor]), [the collectors'] affiliation with that office, and the address ([the collectors'] law firm) to which payment should be sent." *Id.*

In its long-standing guidance on compliance with the Act, the Federal Trade Commission ("FTC") identified several acceptable names that a collector may use. A debt collector:

> may use its full business name, the name under which it usually transacts business, or a commonly-used acronym. When the collector uses multiple names

> in its various affairs, it does not violate [§ 1692e(14)] if it consistently uses the
> same name when dealing with a particular customer.

Federal Trade Commission, Staff Commentary on the Fair Debt Collection Practices Act, 53

Fed. Reg. 50097, 50107 (1988) [hereinafter FTC Commentary].[1]

Cases that find a violation of a section 1692e(14) "typically involve a debt collector

misrepresenting its identity, such as by purporting to be the creditor when it is not, purporting to

be a government agency when it is not, or purporting to be distinct from the creditor when it is

not." *Mahan v. Retrieval-Masters Credit Bureau, Inc.*, 777 F. Supp. 2d 1293, 1300 (S.D. Ala.

2011).[2] In *Mahan*, the court held it did not violate section 1692e(14) when the collector,

Retrieval-Masters Credit Bureau, used the trade name American Medical Collection Agency,

relying on the collector's registration with the New York Department of State to do business

under the latter name. *Id.* at 1298.

The *Mahan* court reasoned "the fundamental point is that, as one district court

recognized, '§ 1692e (14) at its core clearly prohibits the use of a name that is neither the

collector's actual corporate name nor its trade name, licensed or otherwise.' " *Id.* at 1301. The

court further found the case did not fit that paradigm as the name the collector used in

communicating with the plaintiff was a duly licensed trade name and there was nothing

deceptive or manipulative about contacting the plaintiff under that name, especially in light of

the fact that the collector had been conducting business under the name for years. *Id.* The court

granted the motion to dismiss, finding that there were no facts pleaded in the complaint to

---

[1] Although this FTC guidance is not binding on the district courts, it is entitled to deference to
the extent its logic is persuasive. *Brown v. Card Serv. Ctr.*, 464 F.3d 450, 455-56 (3d Cir. 2006).
*See also Maguire v. Citicorp Retail Servs., Inc.*, 147 F.3d 232, 237 (2d Cir. 1998) (*citing* FTC
Commentary).
[2] Ms. Hsu principally cites to the *Mahan* decision in support of her Motion. The opinion,
however, does not support her position.

suggest that the use of the name registered in New York "was intended to or had the effect of, confusing, misleading or deceiving [the plaintiff]." *Id.*

Where a trade name is registered, it does not violate section 1692e(14), or other provisions of the Act, to use that name, even where it is registered in a state other than where the collection at issue is attempted. *Velez v. Healthcare Revenue Recovery Grp., LLC*, No. 1:16-cv-377, 2017 WL 1476144 (M.D.N.C. Apr. 24, 2017). In *Velez*, the plaintiff brought a putative class claim under multiple provisions of the Act, including section 1692e(14), claiming a collector used a false name in a letter it sent to him because the name used was not registered in the state of North Carolina. In dismissing the claims under Rule 12(b)(6), the court took judicial notice of the collector's registration of the trade name, Account Resolution Services, in the state of Florida as a trade name for the collector. Relying on the Florida fictitious name registration, the court reasoned,

> Because both North Carolina and Florida law permit businesses to use an assumed or fictitious name, see Fla. Stat. § 865.09(3); N.C. Gen. Stat. § 55D-2(a)(6), the allegations contained in the [c]omplaint do not plausibly establish that [the collector] somehow misrepresented or lied about its affiliation with ARS by sending a letter under an assumed business name.

> Consistent with that conclusion, it is undisputed that [the collector] has registered its fictitious name, ARS, in the State of Florida as evidenced by the public filing attached to [the collector's] brief. . . . In light of the undisputed facts, this court finds no plausible basis for [the plaintiff's allegation that "ARS Account Resolution Services' is not [the collector's] true name."

*Id.* at \*5-6. The court further found there were no allegations the use of the trade name was false, deceptive or misleading, finding that the plaintiff had not "alleged that [the collector] used the separate names interchangeably, for some deceptive or misleading purpose, so that [the plaintiff] was in fact misled." And the court rejected the argument that failing to register the name as a fictitious name with the state of North Carolina would violate the Act. *Id.* at \*6.

Consistent with FTC Commentary and federal case law, the use of the name ERC in the Letters does not violate the Act. It cannot be disputed that ERC is an acronym for Enhanced Recovery Company, ERC's full, corporate name. The use of acronyms for corporate names is specifically identified as permissible under the FTC Commentary.

Moreover, as was true in *Velez* and *Mahan*, where the courts rejected claims for violation of section 1692e(14) because the name used had been registered as a fictitious name, ERC is, in fact, a registered trade name for Enhanced Recovery Company, LLC. ERC is registered as a fictitious name for Enhanced Recovery Company with the Florida Secretary of State, and it was so registered at the time the Letters were sent. *See* Decl. of J. Davis at ¶ 5, Exh. A. Furthermore, ERC has also been registered with the Florida Office of Financial Regulation, and appears on ERC's license as a "debt collection agency" issued from that office. *See id.* at ¶ 6, Exh. B.

Moreover, ERC is registered with the United States Patent and Trademark Office as a service mark used by Enhanced Recovery Company, LLC for debt recovery services. *See* ERC, Registration No. 5,169,227. *See also* Decl. of J. Davis at ¶ 7, Exh. 8. The registration certificate for this registration further indicates that Enhanced Recovery Company filed for registration in June 2015 and has been using the name ERC in connection with such services since 1999. *See* ERC, Registration No. 5,169,227. *See also* Decl. of J. Davis at ¶ 8.

Federal registration of a trademark, or service mark, is *prima facie* proof that the registrant has exclusive rights to use the mark in connection with the goods or services for which the registration has issued. *See* 15 U.S.C. §§ 1114, 1115(a). As the registrant of the mark "ERC", Enhanced Recovery Company, LLC, has the exclusive right to use the name ERC, or any similar name, in providing debt collection services, nationwide. Accordingly, the use of ERC on its letters is not false and, as a matter of law, could not mislead one as to the sender of the letter.

Ms. Hsu does not argue ERC has used inconsistent names when seeking to collect on the account at issue, nor that ERC has otherwise referred to itself as "ERC" with an intent to mislead or deceive her. In fact, Ms. Hsu's evidence demonstrates that "ERC" was <u>consistently</u> used in both of the Letters she received. *See Motion* at Exhibit 1-3. *See also* Decl. of J. Davis at ¶ 9. The FTC Commentary states a collector is even permitted to use inconsistent names in conducting its business as long as "it consistently uses the same name when dealing with a particular customer." FTC Commentary at 50107. Likewise, the Supreme Court has recognized the prohibition on using false names is intended to prevent misrepresentations regarding the affiliation of an entity. Thus, there is nothing inappropriate where, as here, a collector consistently uses the same name in communications with a consumer and instructs a consumer to send correspondence or payments to its name and address.

Both of the Letters reflect they were sent by "ERC." Neither uses any name other than ERC. Nor do the Letters contain any language to mislead the consumer that the letters originated from anyone other than a collector that refers to itself as ERC. These letters do not create a false sense of urgency. And any purported confusion as to the identity of ERC is vitiated by the inclusion of ERC's contact information in the letter. The Letters correctly identify ERC's corporate address, "ERC, 8014 Bayberry Road, Jacksonville, FL 32256," and provides contact information for consumers to make payments, send disputes, or otherwise interact with it. These letters do not leave a consumer to go and find this information for his or herself. As the Supreme Court found in *Gillie*, similar letters, which provide clear information on how to contact the collector, do not violate section 1692e(14). *Gillie*, 136 S. Ct. at 1601-02.

Further, the FTC recognized that a collector is permitted to use any name under which it regularly conducts business. Ms. Hsu does not suggest in the Motion that ERC does not actually

conduct business under the name ERC. And, in fact, the Letters show just the opposite, that ERC regularly conducts business under that name and used that name consistently in attempting to collect on her overdue account owed to T-Mobile, USA. Both of these Letters comport with ERC's regular business practice, to use the acronym ERC in attempting collection. *See* Declaration of J. Davis at ¶ 9.

Finally, the use of ERC in the Letters does not violate the Act because any alleged misrepresentation of the identity of the sender, or alleged confusion resulting therefrom, was not material. To violate section 1692e of the Act, or its subdivisions, the complained of conduct must be material, that is, it must have the ability to influence the consumer's decision. *See O'Rourke v. Palisades Acquisition XVI, LLC*, 635 F.3 938, 942 (7th Cir. 2011). The materiality standard advances the aims of the Act, which is to "provide information that helps consumers to choose intelligently, and by definition immaterial information neither contributes to that objective . . . nor undermines it[.] *Hahn v. Triumph Partnerships LLC*, 557 F.3d 755, 759 (7th Cir. 2009). Although the Fifth Circuit has not adopted the materiality standard, five Circuit Courts of Appeals have expressly adopted it,[3] and the same standards are implicit in Fifth Circuit case law regarding claims under section 1692e of the Act. *Gonzales v. Kay*, 577 F.3d 600, 604 (5th Cir. 2009); *Goswami v. Am. Collections Enter., Inc.*, 377 F.3d 488, 495 (5th Cir. 2004). Against this backdrop, this Court has previously stated:

> [t]he ultimate question . . . is whether the unsophisticated or least sophisticated consumer would have been led by the debt collection letter into believing something untrue that would have influenced their decision-making.

---

[3] *See id.*; *Jensen v. Pressler & Pressler*, 791 F.3d 413, 421 (3d Cir. 2015); *Palisades Acquisition XCI, LLC*, 782 F.3d 119, 126 (4th Cir. 2014); *Miller v. Javitch, Block & Rathbone*, 561 F.3d 588, 596 (6th Cir. 2009); *Donohue v. Quick Collect, Inc.*, 592 F.3d 1027, 1033-34 (9th Cir. 2010).

*Gomez v. Niemann & Heyer, LLP*, No. 1:16-cv-119-RP, 2016 WL 3562148, at *5 (W.D. Tex. June 24, 2016).

Here, even if the use of ERC were not expressly permitted, which it is, its use would still not violate the Act because it would not affect the decision-making of the consumer. Any technical misstatement of the identity of the collector would neither misrepresent the legal status of the debt nor affect the ability of the consumer to respond to the letter. ERC's address for sending payments on the account and for disputing the validity or accuracy of the account is included in the Letters, as well as several other pieces of information allowing Ms. Hsu to contact ERC. Furthermore, Ms. Hsu does not explain in her Motion how or why the identity of the collector seeking collection of her overdue account on behalf of T-Mobile could influence her decision on how to respond to the Letters and, logically, it would not affect her decision-making ability. *See id.* at *7 (" 'a dollar due is a dollar due,' and the ability of the consumer to make intelligent choices moving forward is not hampered because there are so few choices to be had") (*quoting Hahn*, 557 F.3d at 757).

The case law cited in Ms. Hsu's Motion does not alter the conclusion that the use of ERC was permitted in the letter. In *Arslan v. Fla. First. Fin. Grp.*, No. 94-1498-Civ-T-25(E), 1995 WL 731175 (M.D. Fla. Oct. 5, 1995), the court found a collector who had used five personal aliases and two separate company names in attempting to collect a single debt from a consumer violated the Act. *Id.* at *1-4. In so holding, it considered that the consumer would not understand Reed, Lienhart & Associates, used in some of the communications, to be an alias of Florida First Financial Group, the named collector in other communications, and noted it was not registered as a trade name for the collector until after the lawsuit was initiated. *Id.* at *3-4. The *Arslan* opinion is inapposite here, where the name at issue, ERC, clearly corresponds to Enhanced Recovery

Company, and was consistently used with Ms. Hsu. In fact, the *Mahan* opinion, **to which Ms. Hsu principally cites in support of her Motion**, expressly distinguished *Arslan* on the basis that the collector in *Mahan* did not use its trade name to deceive or misrepresent its identity. In *Mahan*, as here, the collector used a licensed and registered trade name in communicating with the consumer, and the court found that "[t]here are no facts alleged, and no circumstances to suggest, that defendant's use of its registered trade name was intended to, or had the effect of, confusing, misleading or deceiving [the consumer]." *Mahan*, 777 F. Supp. 2d at 1299 (holding the collector did not violate the Act by using trade name registered in another state in collecting from the consumer).

In *Owens v. Brachfield*, No. C07-4400, 2008 WL 3891958 (N.D. Cal. Aug. 20, 2008), the collector used a name including "PC," denoting professional corporation, thereby implying it was the legal corporate name for the collector, when in fact it was incorporated under a distinct legal name. *Id.* at *1. The court noted the name used in the letter was not registered as a trade name in California and thus the burden was shifted to the defendant to demonstrate why summary judgment should not be entered—i.e., demonstrating facts showing the name was otherwise permitted—but the defendant failed to respond to the motion for summary judgment. Notably, the *Owens* opinion also cites to the same FTC guidance ERC relies on here, guidance which permits use of an acronym or the name under which a business regularly transacts business. *Id.* at *2 (*quoting* FTC Statements of General Policy or Interpretation Staff Commentary on the Fair Debt Collection Practices Act, 53 Fed. Reg. 50,097-02 (1988)). Had the collector in *Owens* showed, as ERC has done, that the name was an acronym, a registered trade name or that it regularly conducts business under the name, then the use would not have violated the Act.

The use of ERC in the Letters is entirely consistent with the Act. The case law discussed herein, as well as the clear guidance from the FTC, demonstrate Defendant was permitted to use ERC to refer to itself in attempting collection from Ms. Hsu. Not only is ERC an acronym for Enhanced Recovery Company, but it is a trade name registered for use by Enhanced Recovery Company, and is a federally registered service mark for Enhanced Recovery Company. The use of ERC is not misleading as to the identity of the sender, nor does it falsely imply that another entity is engaged in collection activity, the conduct the provision of the Act actually seeks to prevent. Accordingly, ERC has not violated the Act, and Ms. Hsu's Motion must be denied.

III.    **Plaintiff's assertion that ERC violated Texas state law in using the name ERC is inaccurate and, even if true, would be insufficient to show a violation of the Act.**

In her Motion, Ms. Hsu asserts that ERC violated the Texas Business and Commercial Code because it did not file an assumed name certificate. ERC, however, is not required to file such certificate under the Business and Commercial Code. And, even if it were required to file a certificate, which it is not, a violation of that Code would not, standing alone, violate the Act; rather Ms. Hsu would have to show ERC violated the Act's substantive provisions, which, as discussed above, she has failed to do. Furthermore, the fact that other entities use the name ERC in Texas in unrelated industries does not render ERC's use of the otherwise permitted name a violation of the Act.

A.  **ERC was not required to file an assumed name certificate under the Business and Commercial Code.**

Ms. Hsu asserts in her Motion that ERC is a debt collector as defined by the Act and her claims depend on that assertion being accurate. Texas law explicitly omits debt collection from activities that constitute doing business in the state. Accordingly, it was not required to file an assumed name certificate. Section 71.051 states:

10

> A person must file a certificate under this subchapter *if the person regularly conducts business* or renders a professional service in this state under an assumed name other than as a corporation, limited partnership, limited liability partnership, limited liability company, or foreign filing entity.

Tex. Bus. & Comm. Code § 71.051 (emphasis supplied).

Although the assumed name provision does not define *regularly conducts business*, it is defined elsewhere in the Texas statutes applicable to business registrations. Section 9.251 of the Business Organizations Code, under Subchapter F: Determination of Transacting Business in this State, specifies the activities that do not constitute transacting business in the state. Among those enumerated activities are:

- "Securing or collecting a debt due the entity or enforcing a right in property that secures a debt due the entity;" and
- "transacting business in interstate commerce"

Tex. Bus. Org. Code § 9.251 (9)-(10). *See also* id.at § 9.002(c) ("A foreign entity is not required to register under this Chapter if other state law authorizes the entity to transact business in this state"). It is undisputed that ERC engaged in communication to Ms. Hsu in an attempt to collect on a debt due which had been placed with ERC for collection. Furthermore, it is undisputed that collecting such due amounts is encompassed within interstate commerce as a matter of law. *See* 15 U.S.C. § 1692(d). Accordingly, debt collection in Texas is not "doing business" under state law, and collectors seeking to enforce obligations are not subject to the general registration requirements applicable to other entities that do business in Texas.

Instead, debt collection in Texas is governed by the Texas Financial Code. The Financial Code requires collectors to obtain and maintain a bond in favor of any person damaged by a violation of the Financial Code. It states:

> A third-party debt collector or credit bureau may not engage in debt collection unless the third-party debt collector or credit bureau has obtained a surety bond

issued by a surety company authorized to do business in this state as prescribed by this section.  A copy of the bond must be filed with the secretary of state.

(b)  The bond must be in favor of:

(1)  any person who is damaged by a violation of this chapter;  and

(2)  this state for the benefit of any person who is damaged by a violation of this chapter.

(c)  The bond must be in the amount of $10,000.

Tex. Fin. Code § 392.101.

Plaintiff does not allege ERC failed to maintain such a bond or that ERC failed to file a copy of the bond with the Texas Secretary of State. And, in fact, Ms. Hsu has named the surety company that issued the applicable bond to ERC. While Ms. Hsu states that she could not find ERC's bond by searching for "ERC" on the Secretary of State website, she omits the fact that the database can be searched by address, and searching ERC's address contained in the Letter, 8014 Bayberry Road, does, in fact, retrieve the filings applicable to ERC. *See* Decl. of J. Davis at ¶ 10, Exh. D. Notably, ERC's records maintained with the Secretary of State reflect that ERC does business as not only Enhanced Recovery Company, LLC but also ERC. *See id.*

Moreover, the fact that collectors are not required to register as foreign corporations doing business in the state of Texas, or maintain any other registrations other than the above-referenced surety bond, with the Secretary of State is reflected in the guidance issued by the office of the Secretary to debt collectors. The following question for debt collectors appears in the frequently asked questions portions of the Secretary's website:

**1. Are third-party debt collectors and credit bureaus required to register with the secretary of state?**
No, but third-party debt collectors and credit bureaus are required to file a $10,000 surety bond with the secretary of state before engaging in debt collection. Tex. Fin. Code. § 392.101. The bond must be in favor of the State of Texas for the benefit of any person damaged by any violation of Chapter 392, Finance Code. *Id.*

Tex. Secretary of State, Frequently Asked Questions for Third-Party Debt Collectors & Credit Bureaus, http://www.sos.state.tx.us/statdoc/faqs2900.shtml (last visited May 28, 2017). This guidance eliminates any doubt: ERC does not do business in the State of Texas.

Accordingly, ERC was not required to file an assumed name certificate under the Code to seek to obtain payment on overdue obligations from Ms. Hsu or other Texas-based consumers.

**B.   Even if ERC had been required to file an assumed name certificate, the failure to do so would not violate the Act.**

Ms. Hsu suggests ERC violated the Act by failing to file an assumed name certificate under Texas state law. Even if ERC had been required to file such a certificate, which as discussed above, it was not, violation of the Texas law would not constitute a *per se* violation of the Act. Rather, Ms. Hsu would have to show that ERC's failure to abide by the state law separately violated a substantive provision of the Act. And, as discussed in Part II, *supra*, it would not.

Plaintiff's argument contained in the Motion is premised on the erroneous assumption that a violation of the Code is also a violation of the Act. This presumption is not supported by federal case law. Circuit Courts of Appeals addressing this issue have unanimously held that the violation of a state law is ***not*** a *per se* violation of the Act.

Five Circuit Courts of Appeals have considered whether the violation of a state law is a *per se* violation of the Act. The first federal appeals court to address the question was the Ninth Circuit. *See Wade v. Regional Cred. Ass'n*, 87 F.3d 1098 (9th Cir. 1996). In *Wade*, a consumer brought an action against a debt collector alleging it violated the Act by attempting to collect a debt in the state of Idaho, without having a permit as required by state law. *Id.* at 1099. The consumer alleged that this violated, *inter alia*, section 1692 of the Act. *Id.* at 1100. The court recognized the claims under the Act were based entirely on the alleged violations of state law,

and held the violation of a state law is not a *per se* violation of the Act. *Id.* Additionally, it held the collector's actions were innocuous and, therefore, did not violate the substantive provisions of the Act. Specifically, it held that all information given to the consumer was accurate, without false representations, and the collection efforts were not unfair or "unconscionable in either a legal or lay sense." *Id.* To the extent the consumer was deprived of an opportunity to have the collector's activities reviewed by the state department responsible for licensing collectors, the court held that the consumer's remedy lay in Idaho state law, not in the Act. *Id.* at 1100-01.

Similarly, the Eighth Circuit held the violation of a state law does not automatically violate the Act. *Carlson v. First Revenue Assurance*, 359 F.3d 1015 (8th Cir. 2004). In *Carlson*, the consumer sued a collector for an alleged violation of a Minnesota law requiring a state license for each location from which it collected debts. He argued that this, in turn, violated the Act. *Id.* at 1017. The Eighth Circuit concluded such violation did not *per se* violate the Act. It reasoned the Act "was designed to provide basic, overarching rules for debt collection activities; it was not meant to convert every violation of state debt collection law into a federal violation." *Id.* at 1018. It further reasoned that only collection activities that are substantive violations of the Act can support liability under the Act. *Id.*

The Seventh Circuit, echoing the Ninth and Eighth Circuits before it, held the Act could not be used to enforce other federal or state laws. *Beler v. Blatt, Hasenmiller, Leibsker & Moore, LLC*, 480 F.3d 470, 474 (7th Cir. 2007). In *Beler*, the consumer alleged that a collector violated Illinois state law, as well as the Social Security Act, by issuing a citation to the consumer's bank which caused the bank to freeze the consumer's assets, including exempt social security benefits. The Seventh Circuit held that the Act could not be used to enforce these laws, reasoning: "[i]f [the collector] violated the Social Security Act, the statute's rules should be applied. Likewise, if

the [collector] violated Illinois law. [The Act] does not take a state-law dispute and move it to federal court, even though the amount in controversy is well under $75,000 and the parties are not of diverse citizenship." *Id.* at 747.

The Sixth and Eleventh Circuit Courts of Appeals have each addressed this issue and, although each ultimately found a violation of the Act, they did so only after reaffirming their sister Circuits' holdings that a violation of state law does not constitute a *per se* violation of the Act. *See Currier v. First Resolution Invest. Corp.*, 762 F.3d 529, 536 (6th Cir. 2014); *LeBlanc v. Unifund CCR Partners*, 601 F.3d 1185, 1198 (11th Cir. 2010). In *Currier*, the court held that the conduct at issue, maintaining an invalid lien was not just a technical violation of Kentucky state law, but also violated a specific provision of the Act. *Currier*, 762 F.3d at 535. In *LeBlanc*, the Eleventh Circuit held that the collector's failure to register as a collector in the state, a pre-requisite to bringing a lawsuit on the debt, would make a threat to bring suit contained in a consumer letter, a misrepresentation as the unlicensed collector would be prohibited from maintaining suit on the account. *LeBlanc*, 601 F.3d at 1192, 1201. The Eleventh Circuit explicitly reasoned, "we do not hold that all debt collector actions in violation of state law constitute *per se* violations of the [Act]. Rather the conduct at issue must also violate the relevant provision of the [Act]." *Id.* at 1193.

The Fifth Circuit Court of Appeals has not had an opportunity to join its sister Circuits in the above holding. Notwithstanding the lack of Fifth Circuit guidance on this issue, the Court should follow the unanimous direction of the five Circuit Courts of Appeals that have expressly addressed the subject, and similarly held that there is no *per se* liability under the Act for an alleged violation of a state law. Thus, even if ERC violated the Texas Business and Commerce Code by not obtaining an assumed name certificate, which as discussed above, it did not, the

remedy for such violation would not be a claim under the Act, but rather the express remedies set forth in the Code.

The applicable remedies under the Code provision at issue are merely to stay certain legal, civil actions until the non-compliant entity files an assumed name certificate. The Code provides:

> (a)  A person's failure to comply with this chapter does not impair the validity of any contract or act by the person or prevent the person from defending any action or proceeding in any court of this state, but the person may not maintain in a court of this state an action or proceeding arising out of a contract or act in which an assumed name was used until an original, new, or renewed certificate has been filed as required by this chapter.
>
> (b)  In an action or proceeding brought against a person who has not complied with this chapter, the court may award the plaintiff or other party bringing the action or proceeding expenses incurred, including attorney's fees, in locating and effecting service of process on the defendant.

Tex. Bus. & Comm. Code § 71.201. Thus, an entity that fails to file a required assumed name certificate is merely prohibited from prosecuting a civil action on a contract executed under the assumed name. And in the case of where the entity is the defendant, the court may award expenses incurred in locating and effecting service of process on the entity.[4] The Code provides a temporary, affirmative defense to a lawsuit brought by the unregistered entity, and an administrative remedy, that is, compensation for additional amounts expended to serve the entity as a result of its failure to register.

The potential remedy available to Plaintiff under the Code[5] does not establish a claim under the Act. The Act does not convert an affirmative defense available under a separate statutory scheme into an affirmative claim for relief. *See Midland Funding, LLC v. Johnson*, 137 S. Ct. 1407 (2017). In *Johnson*, a collector filed a proof of claim on a time-barred debt in the

---

[4] Ms. Hsu has not claimed to have incurred additional expenses to effect service on ERC or its surety company in this matter.

[5] To be clear, as set forth above, ERC denies any violation of the Code.

consumer's bankruptcy proceeding. The consumer sued under the Act for filing the time-barred proof of claim. The Supreme Court held that the Bankruptcy Code explicitly addresses how proofs of claim on time-barred debts are to be addressed and that no remedy was available under the Act. The Court reasoned that the Bankruptcy Code treats the running of the statute of limitations as an affirmative defense to the enforcement of the proof of claim. Id. at 1414.

Accordingly, even if Ms. Hsu could prove that ERC was required to file an assumed name certificate and failed to do so, which she cannot, her remedy would lie in the remedies provided under section 71.201, recovery of the additional fees required to locate and serve ERC; it would not constitute a violation of the Act, for which she could seek statutory damages and the entirety of her attorneys' fees.

### C. Unrelated entities' use of *ERC* as an assumed name in Texas does not render its use by Enhanced Recovery Company a violation of the Act.

Ms. Hsu argues that ERC should not be allowed to use its name because other entities have filed assumed name certificates for ERC in the state of Texas. But this fact is immaterial. As discussed at length in Part II, above, Enhanced Recovery Company, LLC is permitted to use the acronym, ERC, in its letters under the Act because it is a straightforward acronym of its corporate name, it is a registered trade name, is included on its licensing, where required (and in the state of its corporate offices, Florida), and it is the name under which it regularly does business.

As an initial matter, the very existence of multiple assumed name certificates for "ERC" demonstrates registering an assumed name certificate does not exclude others from conducting business in the state under the same assumed name. This is in contrapose to the federal trademark registration scheme, where registration establishes the registrant's exclusive right to use the mark in a certain industry, nationwide. So while other entities might conduct business in

Texas under the name ERC (other than debt collection services), Enhanced Recovery Company is the only entity permitted to use ERC in Texas, and anywhere else in the country, for debt collection services, the only services covered by the Act.

Moreover, as discussed in Part III.a above, ERC, as an entity engaged in providing collection services, is not required to file an assumed name certificate in the state of Texas. Thus, the fact that other entities not permitted to use ERC in debt collection have filed an assumed name certificate is irrelevant as to whether Enhanced Recovery Company was permitted to use it in Texas. It would be illogical to impose liability on Enhanced Recovery Company for other entities using their own trade names in unrelated industries within the state where, even if it had registered an assumed name certificate, it would not foreclose them from using the same trade name. Especially where Enhanced Recovery Company has taken affirmative steps to obtain a federal registration to foreclose other entities from using ERC while engaging in debt collection services within the United States.

Finally, while Ms. Hsu argues that a consumer reading the letter would not be able to find an assumed name certificate for ERC, or view the Secretary of State's records of the existence of a debt collection bond,[6] she does not explain why a consumer *would* search these information sources or need this information to respond to a straightforward letter seeking to collect on an overdue account owed to T-Mobile. The purpose of the Act is, in part, to ensure the debtor has the information needed to understand what the obligation is, and to communicate with the collector concerning the debt. The Letters did that. In any event, it is far more likely that a consumer searching for additional information would perform an internet search of ERC, its address, its business, or its website, which would produce an abundance of information referring

---

[6] As discussed in Part III.A above, there is actually sufficient information contained in the letter to view the record of ERC's bond on file with the Secretary of State.

to Enhanced Recovery Company doing business as ERC. See Decl. of J. Davis at ¶ 11, Exh. E. So to the extent a consumer sought additional information online regarding the letter or its sender (despite the clear information in the letter itself), the consumer could have readily found that information.

**IV.     Conclusion**

Ms. Hsu claims ERC violated the Fair Debt Collection Practices Act by sending her a letter using the name ERC, rather than "Enhanced Recovery Company, LLC". Defendant did, in fact, send Plaintiff a letter using ERC, however, as set forth herein, the use of ERC was <u>entirely</u> appropriate under the Act. Ms. Hsu has failed to establish a violation of the Act and, consequently, the Motion must be denied.

Respectfully Submitted,

**SMITH, GAMBRELL & RUSSELL, LLP**

By: ___*/s/ Yash B. Dave*_____
Yash B. Dave
Texas Bar No. 24100418
50 North Laura Street, Suite 2600
Jacksonville, FL 32202
Telephone: (904) 598-6127
Facsimile: (904) 598-6227
E-Mail: ydave@sgrlaw.com

***Attorney for Defendants***

## <u>CERTIFICATE OF SERVICE</u>

I certify that on June 5, 2017 a true and correct copy of the foregoing was served via

electronic mail to:

Tyler Hickle
State Bar No. 24069916
4005C Banister Lane
Ste. 120C
Austin, TX 78704
tylerhickle@hicklelegal.com
Tel: (512) 289-3831
Fax: (512) 870-9505

***Attorney for Plaintiff***

_/s/ Yash B. Dave_
Attorney
