UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| JENNIFER HSU, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | 1:17-cv-128-RP |
| | § | |
| ENHANCED RECOVER COMPANY, LLC, | § | |
| and PHILADELPHIA INDEMNITY | § | |
| INSURANCE COMPANY, | § | |
| | § | |
| Defendants. | § | |

## ORDER

Before the Court are Plaintiff's Partial Motion for Summary Judgment, (Dkt. 15), and Defendants' Cross Motion for Final Summary Judgment, (Dkt. 26). Having considered the parties' arguments, the factual record, and the relevant law, the Court grants Defendants' motion.

## I. BACKGROUND

Plaintiff Jennifer Hsu filed this action against Defendants Enhanced Recovery Company, LLC, ("ERC") and Philadelphia Indemnity Insurance Company in a state district court on January 16, 2016. (Pl.'s Pet., Dkt. 9-2). Plaintiff had incurred consumer debt that she was unable to repay; the debt was later assigned or transferred to ERC, a debt collector. (*Id.* ¶¶ 8–9).

Plaintiff's case concerns two collections letters that ERC sent to Plaintiff: one on September 16, 2016, and a second on October 25, 2016. (Collection letters, Dkt. 15-1, at 3–6). The letters included the name of the original creditor, an account number, and a balance due. (*Id.*). However, instead of identifying itself as "Enhanced Recovery Company, LLC," ERC instead identified itself only as "ERC." (*Id.*). Plaintiff's position is that ERC's use of "ERC" to identify itself in its letters violates both the Texas Debt Collection Act, Tex. Fin. Code Ch. 392 ("TDCA"), and the federal Fair Debt Collection Practices Act, 15 U.S.C. § 1692 et seq. ("FDCPA"). (Dkt. 9-2, ¶¶ 19–25).

Plaintiff is a natural person who was obligated to pay a debt to T-Mobile, USA for the use of a personal cell phone. (Hsu Decl., Dkt. 15-1, at 2). ERC is a debt collection company to whom T-Mobile assigned Plaintiff's debt. (Collection letters, Dkt. 15-1, at 3–6; Defs.' Mot. Summ. J., Dkt. 26, at 2). "ERC" appears in large, bold type in a logo at the top-left corner of each letter. (Collection letters, Dkt. 15-1, at 3–6). Each letter refers to ERC as "ERC" in several places, including an address line, (*id.* (directing the recipient to "[s]end correspondence to: ERC, P.O. Box 57610, Jacksonville, FL 32241)), and the return address block, (*id.* (listing as the return address "ERC, P.O. Box 23870, Jacksonville, FL 32241-3870)). Each letter states that the recipient can "manage [his or her] account online at www.payerc.com." (*Id.*). Each letter provides a toll-free phone number for the recipient to call. (*Id.*). Neither letter refers to "Enhanced Recovery Company, LLC"; ERC is identified only as "ERC." (*Id.*).[1]

The evidence establishes that ERC is a limited liability corporation incorporated in Delaware as "Enhanced Recovery Company, LLC." (Certificate of Conversion, Dkt. 15-1, at 14). "ERC" is registered as a fictitious name for Enhanced Recovery Company, LLC with the Florida Secretary of State. (Fictitious Name Detail, Dkt. 22-1, at 6–7).[2] "ERC" is a d/b/a name for Enhanced Recovery Company, LLC registered with the Florida Office of Financial Regulation. (License Search Results Detail, Dkt. 22-1, at 9).[3] "ERC" is a registered service mark owned by ERC on file with the United States Patent and Trademark Office ("USPTO"). (USPTO certificate, Dkt. 22-1, at 11).[4] ERC's senior vice president of compliance attests that ERC "has been using the trade name ERC in

---

[1] Two months after ERC's second letter to Plaintiff, ERC began using the following language in its collection letters: "Our corporate address is: Enhanced Recovery Company, LLC, Doing Business As, ERC and/or Enhanced Resource Centers, 8014 Bayberry Road, Jacksonville, Florida 32256." (Davis Decl., Dkt. 26-1, ¶ 11).

[2] ERC filed its application to register "ERC" as its fictitious name in February 2015. (Fictitious Name Detail, Dkt. 22-1, at 6–7). ERC states that its fictitious name was registered at the time the letters were sent to Plaintiff. (Dkt. 26, at 5).

[3] ERC's license from the Florida Office of Financial Regulation, which includes "ERC" and "Enhanced Resource Centers" as d/b/a names, became effective on October 26, 2016, after Plaintiff had received both of ERC's letters. (License Search Results Detail, Dkt. 22-1, at 9).

[4] ERC's USPTO service mark was first registered in 1999. (USPTO certificate, Dkt. 22-1, at 11).

2

connection with providing debt collection services since the year 1999 . . . [and] has consistently and regularly conducted business using the acronym 'ERC' during that time." (Davis Decl., Dkt. 16-1, at 2). In ERC's bond registration file with the Texas Secretary of State, ERC lists "ERC" as a d/b/a name. (Debt Collector Search Result, Dkt. 16-1, at 13).[5]

Meanwhile, Plaintiff points out that ERC has not registered "ERC" as an assumed name with the Texas Secretary of State; in fact, another company—ERC Environmental & Construction Services, Inc.—has already a registered "ERC" as an assumed name in Texas. (Business Organizations Inquiry, Dkt. 15-1, at 19). Moreover, a different corporation has registered "ERC, Inc." as its legal name with the Texas Secretary of State. (Texas Secretary of State entity search results, Dkt. 15-1, at 21). Plaintiff also produces evidence that at the time ERC sent its collection letters to Plaintiff, its bond registration file with the Texas Secretary of State did not actually list "ERC" as a d/b/a name for ERC. (Debt Collector Search Results, Dkt. 23-1, at 40–42).[6]

Plaintiff asks the Court to grant summary judgment against ERC in favor of her FDCPA claim. (Pl.'s Mot. Part. Summ. J., Dkt. 15, at 7). Meanwhile, Defendants ask the Court to grant summary judgment against Plaintiff on all of Plaintiff's claims. (Dkt. 26, at 20).

## II. LEGAL STANDARD

Summary judgment is appropriate under Rule 56 of the Federal Rules of Civil Procedure only "if the movant shows there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is genuine only if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 254 (1986). "A fact issue is 'material' if its resolution could affect the outcome of the action." *Poole v. City of Shreveport*, 691 F.3d 624, 627 (5th Cir. 2012).

---

[5] ERC's exhibit, an image of a search result on the Texas Secretary of State's website, displays the results of a search performed in May 2017. (Debt Collector Search Result, Dkt. 16-1, at 13).

[6] Plaintiff's exhibit, an image of a search result on the Texas Secretary of State's website, displays the results of a search performed in December 2016. (Debt Collector Search Result, Dkt. 23-1, at 40–42).

The party moving for summary judgment bears the initial burden of "informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "[T]he moving party may [also] meet its burden by simply pointing to an absence of evidence to support the nonmoving party's case." *Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 544 (5th Cir. 2005). The burden then shifts to the nonmoving party to establish the existence of a genuine issue for trial. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585–87 (1986); *Wise v. E.I. Dupont de Nemours & Co.*, 58 F.3d 193, 195 (5th Cir. 1995). After the non-movant has been given the opportunity to raise a genuine factual issue, if no reasonable juror could find for the non-movant, summary judgment will be granted. *Miss. River Basin Alliance v. Westphal,* 230 F.3d 170, 175 (5th Cir. 2000). The court will view the summary judgment evidence in the light most favorable to the non-movant. *Rosado v. Deters*, 5 F.3d 119, 123 (5th Cir. 1993).

### III. DISCUSSION

*A. FDCPA*

The FDCPA bars debt collectors from using "any false, deceptive, or misleading" practices. 15 U.S.C. § 1692e ("Section 1692e"). "Without limiting this general ban, [Section] 1692e enumerates 16 categories of conduct that qualify as false or misleading." *Sheriff v. Gillie*, 136 S. Ct. 1594, 1598 (2016) (quotation marks omitted). Plaintiff alleges that ERC violated only one such category: "the use of any business, company, or organization name other than the true name of the debt collector's business, company, or organization." 15 U.S.C. § 1692e(14) ("Section 1692e(14)"); (Dkt. 9-2, at ¶¶ 23–25).

When deciding whether a debt collection letter violates Section 1692e, courts view the letter from the perspective of an "unsophisticated or least sophisticated consumer." *Goswami v. Am.*

4

*Collections Enter., Inc.*, 377 F.3d 488, 495 (5th Cir. 2004) (quotation marks omitted).[7] Although the unsophisticated consumer is neither "shrewd nor experienced in dealing with creditors," he or she is not "tied to the very last rung on the [intelligence or] sophistication ladder." *Id.* "Application of the unsophisticated consumer test is objective, meaning that it is unimportant whether the individual who actually received an allegedly violative letter was misled or deceived." *Gomez v. Niemann & Heyer, L.L.P.*, No. 1:16-CV-119 RP, 2016 WL 3562148, at *4 (W.D. Tex. June 24, 2016).[8]

Plaintiff's central theory is that "ERC" cannot be ERC's true name because the company did not register its initials as an assumed name with the Texas Secretary of State. This theory is both at the heart of Plaintiff's own motion for summary judgment, (*see* Dkt. 15, at 5 ("a debt collector may not use an unregistered assumed name without violating [Section 1692(e)(14)]")), and Plaintiff's opposition to Defendants' motion, (*see* Pl.'s Resp. Defs.' Mot. Summ. J., Dkt. 28, at 13–14 ("[ERC] violated the FDCPA . . . not merely because they used an unregistered assumed name. They also used an assumed name registered to a completely different entity; used a name nearly identical to a third entity; and inconsistently used the unregistered assumed name.")).

Defendants' central theory, meanwhile, is that they are entitled to judgment as a matter of law because "ERC" is registered with two state agencies in Florida, where ERC maintains its principal office,[9] and with the USPTO. (Dkt. 26, at 2 ("[T]he use of ERC was not false or misleading: it is an acronym for the full corporate name and is a trade name regularly used by

---

[7] The Fifth Circuit does not recognize a meaningful difference between the "least sophisticated consumer" and the "unsophisticated consumer," and treats the two standards as collectively creating a single standard of review. *See Daugherty v. Convergent Outsourcing, Inc.*, 836 F.3d 507, 511 n.2 (5th Cir. 2016) (collapsing the two standards because the difference between to two is "*de minimis* at most"). Like the Fifth Circuit, the Court will treat the two standards as identical and refer to only the "unsophisticated consumer" for ease of reference. *Id.*

[8] There is a question—unanswered by the Fifth Circuit—as to whether the FDCPA also requires that a debt collector's conduct materially affect the debtor's decision about how to handle the collection letter. *See Gomez*, 2016 WL 3562148, at *4–5 (discussing the materiality standard). The parties appear to agree that the materiality standard applies, but disagree about whether the letter's effect on Plaintiff—if any—was material. (Dkt. 26, at 7–8; Dkt. 28, at 10). The Court need not decide whether to apply the materiality standard or whether ERC's alleged FDCPA violation was material because it holds that ERC did not violate the FDCPA as a matter of law.

[9] ERC's senior vice president of compliance states that ERC's principal place of business is located in Jacksonville, Florida. (Davis Decl., Dkt. 22-1, at 3).

Enhanced Recovery Company as reflected in state registrations as a fictitious name and federal registration as a service mark.")). The Court agrees with Defendants' position.

Although the Fifth Circuit has not defined "true name" for the purposes of Section 1692e, federal courts routinely hold that a debt collector is not liable—as a matter of law—under Section 1692(e)(14) for the use of a registered trade, fictitious, or assumed name. *See Starosta v. MBNA Am. Bank, N.A.*, 244 F. App'x 939, 941 (11th Cir. 2007) (affirming a Rule 12(b)(6) dismissal in part because the debt collector used a name which was registered as a fictitious name with the state of Florida); *Mahan v. Retrieval-Masters Credit Bureau, Inc.*, 777 F. Supp. 2d 1293, 1298–1301 (S.D. Ala. 2011) (dismissing the plaintiff's FDCPA claim for failure to state a claim where the debt collector's correspondence identified it by its "duly registered trade name under New York law"); *Velez v. Healthcare Revenue Recovery Grp.*, LLC, No. 1:16-CV-377, 2017 WL 1476144, at *6 (M.D.N.C. Apr. 24, 2017) (dismissing the plaintiff's FDCPA claim for failure to state a claim where the debt collector used a fictitious name and had "registered its fictitious name . . . in the State of Florida"); *Boyko v. Am. Int'l Grp., Inc.*, No. CIV. 08-2214 RBK/JS, 2009 WL 5194431, at *7 (D.N.J. Dec. 23, 2009) ("[A] collector's 'true name' includes the collector's legal name . . . as well as the name under which it is licensed to do business."); *Orenbuch v. N. Shore Health Sys., Inc.*, 250 F. Supp. 2d 145, 151 (E.D.N.Y. 2003) (granting summary judgment in favor of the debt collector in part because it used a "registered trade name" when corresponding with the plaintiff); *Kizer v. Am. Credit & Collection*, No. CIV. B-90-78 (TFGD), 1990 WL 317475, at *6 (D. Conn. Dec. 17, 1990) ("[T]he name under which a debt collector is licensed to do business . . . is the debt collector's true name for purposes of the FDCPA.").

The Court is satisfied that this approach is consistent with the purpose of the FDCPA. The FDCPA was enacted in part "to eliminate abusive debt collection practices by debt collectors." 15 U.S.C. § 1692(e). Elaborating on what conduct complies the FDCPA, the Federal Trade

Commission ("FTC")—one of the agencies charged with enforcing the FDCPA—stated in informal guidance that "[a] debt collector may use a name that does not misrepresent his identity" to comply with Section 1692e(14). FTC, Statements of General Policy or Interpretation Staff Commentary on the Fair Debt Collection Practices Act, 53 FR 50097-02.[10] One purpose of registering a trade name, fictitious name, or assumed name with a state or government agency is to establish the name as part of a business's identity. Protecting the use of a registered name, then, is consistent with the FTC's guidance that a debt collector may use a name that does not misrepresent its identity without violating the FDCPA.

Accordingly, the Court holds that a debt collector is not liable under Section 1692e(14) when it uses a trade name or fictitious name that is registered with the state that appears in the debt collector's address in its correspondence to the debtor. Here, ERC's letters to Plaintiff each provide a Florida P.O. box as the company's address. ERC had registered its initials as a fictitious name with the Florida Secretary of State at the time it sent its letters to Plaintiff. The Court therefore holds that ERC's initials are a "true name" for the purposes of Section 1692e(14). Defendants are entitled to summary judgment on Plaintiff's FDCPA claim.

In light of the Court's holding, it is appropriate to address two of Plaintiff's arguments. First, Plaintiff asserts that an unlawful fictitious name cannot be a true name under the FDCPA. (Dkt. 23, at 4; Dkt. 28, at 6). The crux of Plaintiff's argument is that ERC's use of "ERC" in its letters to Plaintiff violated the Texas Assumed Business or Professional Name Act, Texas Business and

---

[10] Plaintiff insists that the FTC's 1988 staff commentary on the FDCPA "is no longer in effect and is entitled to no deference" because the Consumer Financial Protection Bureau ("CFPB") was given rulemaking authority over the FDCPA. (Dkt. 28, at 5). The Court disagrees. Even after the CFPB's creation, the FTC has retained authority to enforce the FDCPA when such authority is not specifically committed to the CFPB. 15 U.S.C. § 1692*l*; *see also Hernandez v. Williams, Zinman & Parham PC*, 829 F.3d 1068, 1072 n.3 (9th Cir. 2016) (recognizing that "the F[TC] . . . shares concurrent authority to enforce the FDCPA with the [CFPB]"). Accordingly, federal courts continue to give weight to the FTC's 1988 staff commentary, even after Congress granted concurrent authority to the CFPB. *See Leonard v. Zwicker & Assocs., P.C.*, No. 17-10174, 2017 WL 4979160, at *3 (11th Cir. Nov. 1, 2017) (according "considerable weight" to the FTC's 1988 staff commentary); *Gulley v. Markoff & Krasny*, 664 F.3d 1073, 1075 (7th Cir. 2011) (giving "respectful consideration" to the FTC's 1988 staff commentary); *McLain v. Head Mercantile Co.*, No. CV 16-780-JWD-RLB, 2017 WL 3710073, at *20 (M.D. La. Aug. 28, 2017) (citing the FTC's 1988 staff commentary). Like many other federal courts, the Court gives weight to the FTC's interpretation of the FDCPA.

Commerce Code Chapter 71 ("ABPNA"). (Dkt. 15, at 5). The ABPNA requires a limited liability company or foreign filing entity to file a certificate under the statute if it "regularly conducts business . . . in [Texas] under an assumed name." Tex. Bus. & Com. Code § 71.101(1). Defendants do not argue that ERC has complied with the ABPNA; they argue instead that ERC does not need to. (Dkt. 22, at 10–11 (disputing that the ABPNA applies to ERC, and citing Texas Business Organizations Code § 9.251(8)–(9) for the proposition that "securing or collecting a debt" does not constitute "transacting business" in Texas)).

The Court need not decide whether ERC's letters to Plaintiff violate the ABPNA, because even if they did, an ABPNA violation would not establish that "ERC" is not the company's true name under Section 1692e(14). The Court agrees with the circuit courts that have held that a debt collector's state law violation is not a *per se* violation of the FDCPA. *See, e.g.*, *Wade v. Reg'l Credit Ass'n*, 87 F.3d 1098, 1100 (9th Cir. 1996) (disagreeing with plaintiff's argument "that debt collection practices in violation of state law are *per se* violations of the FDCPA"); *Carlson v. First Revenue Assur.*, 359 F.3d 1015, 1018 (8th Cir. 2004) ("The FDCPA . . . was not meant to convert every violation of a state debt collection law into a federal violation. Only those collection activities that use 'any false, deceptive, or misleading representation or means' . . . will also constitute FDCPA violations.") (quoting 15 U.S.C. § 1692e).[11] Ultimately, a debt collector's conduct must be "false, deceptive, or misleading" to violate Section 1692e; the statute's "true name" provision is simply an elaboration on the statute's broader prohibition against deceptive acts. 15 U.S.C. §§ 1692e, 1692e(14). An entity's failure to comply with the ABPNA does not automatically constitute a violation of Section 1692e(14) because the entity's failure to register its assumed name with the Texas Secretary of State

---

[11] Plaintiff cites two district court decisions to support her assertion that "a debt collector may not use an unregistered assumed name without violating the 'true name' requirement of the FDCPA." (Dkt. 15, at 5 (citing *Arslan v. Florida First Fin. Grp.*, No. 94-1498-CIV-T-25(E), 1995 WL 731175 (M.D. Fla. Oct. 5, 1995) and *Owens v. Brachfeld*, No. C07-4400, 2008 WL 3891958 (N.D. Cal. Aug. 20, 2008))). Neither *Arlsan* nor *Owens* bears on the facts of this case. In both cases, the debt collectors used a fictitious name or trade that was not registered *anywhere*. *Arslan*, 1995 WL 731175, at *4; *Owens*, 2008 WL 3891958, at *2. Neither case holds that a debt collector cannot use a fictitious name registered in State X when communicating with a debtor in State Y.

will not necessarily render a debt collector's communications with a debtor false, deceptive, or misleading.

In fact, assuming *arguendo* that ERC violated the ABPNA, this case presents an example of a state-law violation that would not constitute a FDCPA violation. Here, Plaintiff received two letters from a company attempting to collect a debt originating with T-Mobile USA. (Dkt. 15-1, at 4, 6). Those letters identify ERC as a debt collection company; provide a toll-free phone number at which to contact ERC; provide a link to a payment website (www.payerc.com), at which ERC lists a Jacksonville, Florida street address; and list two mailing addresses located in Jacksonville. (*Id.*). Even an unsophisticated consumer armed with this information is equipped to verify that "ERC" is a fictitious name associated with Enhanced Recovery Company, LLC. ERC's Florida registration ensures that its use of its initials is not false, deceptive, or misleading notwithstanding a violation of the ABPNA.

This brings the Court to Plaintiff's second argument. Plaintiff argues that ERC's alleged ABPNA violation is made all the more misleading because (a) one company (ERC Environmental & Construction Services, Inc.) has registered "ERC" as an assumed name in Texas, and (b) a second company has registered "ERC, Inc." as its legal name. (Dkt. 15, at 6; Dkt. 28, at 9). Plaintiff argues that these facts render ERC's use of its registered fictitious name "inherently misleading" because "the least sophisticated consumer could have confused [ERC] with two other entities." (Dkt. 23, at 5). Plaintiff's argument relies on an unconvincing sequence of assumptions. The first is that the unsophisticated consumer would search for "ERC" on the Texas Secretary of State's website rather than the Florida Secretary of State's, even though the collection letters provide a Florida address. The second is that the unsophisticated consumer would become confused when he or she realized that neither ERC Environmental & Construction Services, Inc. nor ERC, Inc. were debt collectors. The third is that the unsophisticated consumer would then fail to try to resolve his or her confusion

9

by trying any of the following: (1) searching the Florida Secretary of State's website, (2) calling the toll-free number on the collection letters, (3) mailing a letter to the P.O. box address requesting clarification of ERC's identity, (4) visiting www.payerc.com, or (5) conducting an internet search of debt collection companies named "ERC" located in Florida. In short, Plaintiff asks the Court to believe that the unsophisticated consumer will become confused but will nonetheless fail to make even simple, commonsense efforts to resolve his or her confusion.

The Court does not take such a dim view of the unsophisticated consumer. As the Fifth Circuit has explained, the unsophisticated consumer is "not tied to the very last rung on the intelligence or sophistication ladder." *Goswami*, 377 F.3d at 495. The unsophisticated consumer is capable of taking simple, commonsense actions that would lead him or her to discover that the acronym used in a debt collector's correspondence is a registered fictitious name in the state in which the entity lists its address. Accordingly, none of Plaintiff's arguments dissuades the Court from adopting the rule announced above, under which Defendants are entitled to summary judgment on Plaintiff's FDCPA claim.

### B. TDCA

Plaintiff also brings two causes of action under the Texas Debt Collection Act, Texas Financial Code Chapter 392 ("TDCA"). (Dkt. 1-1, at 3). The first cause of action is brought under TDCA § 392.304(a)(1)(A), which bars a debt collector from "using a name other than the . . . true business or professional name or the true personal or legal name of the debt collector." (Dkt. 1-1, at 5). The second is brought under TDCA § 392.304(a)(1)(A), a catch-all provision which bars a debt collector from "using any other false representation or deceptive means to collect a debt or obtain information concerning a consumer." (Dkt. 1-1, at 5–6). Plaintiff's motion does not seek summary judgment in her favor on either of her state-law claims. Defendants' motion seeks summary judgment in their favor on both claims.

Defendants urge the Court to interpret the state-law provisions in the same way that it interprets their federal counterparts. (Dkt. 26, at 9–11 (citing *Gomez*, 2016 WL 3562148, at *6 ("The conduct prohibited under the TDCA is coextensive with that prohibited under the FDCPA, at least insofar as the same actions that are unlawful under the FDCPA are also unlawful under the TDCA." (quotation marks and citation omitted)))). Plaintiff, meanwhile, argues that because "the TDCA does not define 'true name,'" the term should be defined according to common usage, which according to Plaintiff is indicated by courts' definition of "true name" for the purposes of Texas Rule of Civil Procedure 28 ("Rule 28"). (Dkt. 28, at 11–12). Rule 28 provides that an entity or individual "doing business under an assumed name may sue or be sued in its . . . assumed or common name," but that "the true name may be substituted." (*Id.*). Based solely on the text of that provision, Plaintiff concludes that an entity's assumed name can *never* be a true name for purposes of the TDCA. (*Id.*). The Court disagrees.

"The scope of Rule 28 is purely procedural" and "was not intended to change the substantive rights of the owners of a business operated under an assumed name." *Dillard v. Smith*, 146 Tex. 227, 230–31 (1947); *see also Howell v. Coca-Cola Bottling Co. of Lubbock*, 595 S.W.2d 208, 211 (Tex. Civ. App.—Amarillo 1980, writ ref'd n.r.e.) (stating that Rule 28 "does not, however, change any substantive rights" and that "the rule has no relevance to a case unless the suit is brought by or against the business entity in its assumed or common name"). Rule 28 was adopted in 1941 against a backdrop of Texas appellate court decisions barring suits against individuals or entities in their assumed or trade name. *Dillard*, 146 Tex. at 230–31. Plaintiff has offered no authority to support the notion that this procedural statute has any bearing on the substantive definition of a debt-collection-practices provision enacted half a century later.[12] Moreover, under Plaintiff's narrow construction, a debt collector could register a trade-, fictitious-, or assumed name and use it so frequently that any

---

[12] The TDCA was enacted in 1997. *See* Acts 1997, 75th Leg., ch. 1008, § 1, eff. Sept. 1, 1997.

11

debtor would most readily recognize the debt collector by its trade or assumed name, and yet the TDCA nonetheless would bar the debt collector from using its more recognizable name. The Court does not think that Plaintiff's unsupported construction is consistent with the purposes of the TDCA and declines to adopt it.

Instead, because no party has cited any authority interpreting either TDCA provision at issue in this case, and because the language from each provision closely mirrors the language from the corresponding provisions in the FDCPA, the Court will interpret the TDCA provisions at issue here in the same fashion as it interprets their federal counterparts. *See Gomez*, 2016 WL 3562148, at *6; *Langley v. Weinstein & Riley, P.S.*, No. CIV.A. H-12-1562, 2013 WL 2951057, at *9 (S.D. Tex. June 14, 2013) (observing that "the FDCPA and the TDCA are very similar," and applying the same analysis to both causes of action) (quotation marks and citation omitted); *Bullock v. Abbott & Ross Credit Servs.*, L.L.C., No. A-09-CV-413 LY, 2009 WL 4598330, at *2 (W.D. Tex. Dec. 3, 2009) ("The same actions that are unlawful under the FDCPA are also unlawful under the TDCA."). Accordingly, the Court grants summary judgment in favor of Defendants against Plaintiff's TDCA claims on the same grounds that it granted summary judgment in favor of Defendants against Plaintiff's federal claim.

## IV. CONCLUSION

For these reasons, Plaintiff's Partial Motion for Summary Judgment, (Dkt. 15), is **DENIED**, and Defendants' Cross Motion for Final Summary Judgment, (Dkt. 26), is **GRANTED**.

**SIGNED** on January 5, 2018.

_____
ROBERT PITMAN
UNITED STATES DISTRICT JUDGE